**TYLER T. PRIME**
**N.J. Attorney ID No. 041462012**
**PRIME LAW**
**Attorneys at Law**
14000 Horizon Way, Suite 325
Mount Laurel, New Jersey 08054
(856) 273-8300
Attorneys for Plaintiffs

| | |
|---|---|
| ANTHONY F. DEGENNARO, on behalf of himself and all others similarly situated, | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY |
| *Plaintiff,* | CIVIL ACTION NO.: 1-17-cv-07314 |
| v. | **AMENDED COMPLAINT** |
| HAYNES FURNITURE COMPANY, INC. d/b/a THE DUMP, JOHN and JANE DOES 1-10, individually and as owners, officers, directors, shareholders, founders, managers, agents, servants, employees, representatives and/or independents contractors of HAYNES FURNITURE COMPANY, INC. d/b/a THE DUMP, NEW VENTURE HOLDINGS, LLC d/b/a THE DUMP, JOHN and JANE DOES 1-10, individually and as owners, officers, directors, shareholders, founders, managers, agents, servants, employees, representatives and/or independent contractors of NEW VENTURE HOLDINGS, LLC d/b/a THE DUMP, TURNERSVILLE ROUTE 42, LLC d/b/a THE DUMP, JOHN and JANE DOES 1-10, individually and as owners, officers, directors, shareholders, founders, managers, agents, servants, employees, representatives and/or independent contractors of TURNERSVILLE ROUTE 42, LLC d/b/a THE DUMP, and XYZ CORPORATIONS 1-10, | |
| *Defendants.* | |

Plaintiff, Anthony F. Degennaro, residing at 13 Overhill Road, Asbury Park, New Jersey 07712, on behalf of himself and all others similarly situated (hereinafter, individually, "Plaintiff" and the "Class" or, collectively, "Plaintiffs"), by and through his counsel, Prime Law and all attorneys therein, hereby presents this Class Action Complaint against Defendants, Haynes Furniture Company, Inc. d/b/a The Dump (hereinafter "Haynes"), John and Jane Does 1-10, individually and as owners, officers, directors, shareholders, founders, managers, agents, servants, employees, representatives and/or independent contractors of Haynes (hereinafter "John and Jane Does 1-10 of Haynes"), New Venture Holdings, LLC d/b/a The Dump (hereinafter "New Venture"), John and Jane Does 1-10, individually and as owners, officers, directors, shareholders, founders, managers, agents, servants, employees, representatives and/or independent contractors of New Venture (hereinafter "John and Jane Does 1-10 of New Venture"), Turnersville Route 42, LLC d/b/a The Dump (hereinafter "Turnersville Route 42"), John and Jane Does 1-10, individually and as owners, officers, directors, shareholders, founders, managers, agents, servants, employees, representatives and/or independent contractors of Turnersville Route 42 (hereinafter "John and Jane Does 1-10 of Turnersville Route 42"), and XYZ Corporations 1-10 (hereinafter, collectively, "Defendants"), and, as such, respectfully avers as follows:

## **INTRODUCTION**

1.      This is a class action brought by Plaintiff, individually and as putative representative of the Class, against Defendants, for the purposes of stopping Defendants from violating the law by advertising inflated and fictitious market or retail prices and, upon which their "discounted prices" are based.

2.      Defendants are in the business of selling indoor and outdoor household furnishings, including, but not limited to, furniture, rugs and mattresses (hereinafter, collectively, "Products"), which are available to purchase at any of Defendants' physical locations.

3.      In its regular and everyday advertisement of Products, Defendants often list the "market" or "retail" price as well as the purported discounted price at which they are selling same; with the average "discounted price" of Products being advertised by Defendants as "30 to 70% off" the market or retail price of same.

4.      Black's Law Dictionary defines "market price" as "the prevailing price at which something is sold in a specific market." *Market Price*, Black's Law Dictionary (9th ed. 2009).

5.      Roget's 21st Century Thesaurus lists "retail price" as a synonym for "market price". *Market Price*, Roget's 21st Century Thesaurus (3rd ed. 2013).

6.      The Administrative Rules of the Division of Consumer Affairs at N.J.A.C. 13:45A-9.6(b)1 and 2 provide, in pertinent, as follows:

> (b)     A former price or price range or the amount of reduction shall be deemed fictitious if it can not [sic] be substantiated, based upon proof:
>
> 1.      Of a substantial number of sales of the advertised merchandise, or comparable merchandise of like grade or quality made within the advertiser's trade area in the regular course of business at any time within the most recent 60 days during which the advertised merchandise was available for sale prior to, or which were in fact made in the first 60 days during which the advertised merchandise was available for sale following the effective date of the advertisement;
>
> 2.      That the advertised merchandise, or comparable merchandise of like grade or quality, was actively and openly offered for sale at that price within the advertiser's trade area in the regular course of business during at least 28 days of the most recent 90

days before or after the effective date of the advertisement …

7.    Based on the standards set forth at N.J.A.C. 13:45A-9.6(b)1 and 2, Defendants' use of the terms "market price" and "retail price", as used interchangeably, are in violation of the law as the market or retail prices advertised by Defendants are inflated and fictitious.

8.    Specifically, the Products offered for sale by Defendants, or comparable merchandise of like grade or quality, rarely, if ever, sell at the purported market or retail prices anywhere in the applicable market.

9.    Moreover, a number of the Products sold by Defendants are boasted as being "one-of-a-kinds", therefore rendering the purported discounted prices Defendants' advertise for such Products the true market or retail price seeing as they are not sold in any other market.

10.    Defendants are defrauding its customers into purchasing Products at "discounted" prices where no such discount truly exists.

11.    This class action suit is being brought for the purposes of stopping Defendants' unlawful practices and to recover for Plaintiff and the Class the overcharges which they paid and the actual discounts they were entitled to receive but did not, together with all other relief allowable by law.

## PARTIES

12.    Plaintiff, on behalf of himself and the Class, realleges and incorporates all of the foregoing paragraphs by reference as if same were fully set forth at length hereinbelow.

13.    Plaintiff is an individual and resident of the City of Asbury Park, County of Monmouth, State of New Jersey.

14.    Haynes is a corporation organized under the laws of the Commonwealth of Virginia and headquartered in Virginia Beach.

15.     Upon information and belief, John and Jane Does 1-10 of Haynes are fictitious individuals meant to represent the owners, officers, directors, shareholders, founders, managers, agents, servants, employees, representatives and/or independent contractors of Haynes who have been involved in the conduct that gives rise to this Class Action Complaint, but are heretofore unknown to Plaintiff.  As John and Jane Does 1-10 of Haynes are identified, Plaintiff shall amend the Class Action Complaint to include them.

16.     New Venture is a limited liability company organized under the laws of the Commonwealth of Virginia, headquartered in Virginia Beach, and registered to do business in the State of New Jersey.

17.     Upon information and belief, John and Jane Does 1-10 of New Venture are fictitious individuals meant to represent the owners, officers, directors, shareholders, founders, managers, agents, servants, employees, representatives and/or independent contractors of New Venture who have been involved in the conduct that gives rise to this Class Action Complaint, but are heretofore unknown to Plaintiff.  As John and Jane Does 1-10 of New Venture are identified, Plaintiff shall amend the Class Action Complaint to include them.

18.     Turnersville Route 42 is a limited liability company organized under the laws of the Commonwealth of Virginia, headquartered in Virginia Beach, and registered to do business in the State of New Jersey.

19.     Upon information and belief, John and Jane Does 1-10 of Turnersville Route 42 are fictitious individuals meant to represent the owners, officers, directors, shareholders, founders, managers, agents, servants, employees, representatives and/or independent contractors of Turnersville Route 42 who have been involved in the conduct that gives rise to this Class Action

Complaint, but are heretofore unknown to Plaintiff. As John and Jane Does 1-10 of Turnersville Route 42 are identified, Plaintiff shall amend the Class Action Complaint to include them.

20.    Upon information and belief, XYZ Corporations 1-10 are fictitious corporations meant to represent any additional corporations who have been involved in the conduct that gives rise to this Class Action Complaint, but are heretofore unknown to Plaintiff. As XYZ Corporations 1-10 are identified, Plaintiff shall amend the Class Action Complaint to include them.

21.    Upon information and belief, Haynes, New Venture and Turnersville Route 42, as co-owners, currently own and operate one (1) location within the State of New Jersey, being "The Dump" in Turnersville, an unincorporated community and census-designated place located within the Township of Washington, County of Gloucester (hereinafter "The Dump Turnersville").

22.    The Dump Turnersville sells its Products to local consumers and has a regular commercial presence in New Jersey; deriving substantial revenue from its operations, including those operations challenged herein.

## JURISDICTION AND VENUE

23.    Plaintiff, on behalf of himself and the Class, realleges and incorporates all of the foregoing paragraphs by reference as if same were fully set forth at length hereinbelow.

24.    Defendants properly removed this action to this Court from the Superior Court of New Jersey pursuant to 28 U.S.C. §§ 1446 and 1453.

25.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

26.     This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a).

27.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants conduct business throughout this district and the events giving rise to Plaintiff's claims took place within this judicial district.

## FACTS

28.     Plaintiff, on behalf of himself and the Class, realleges and incorporates all of the foregoing paragraphs by reference as if same were fully set forth at length hereinbelow.

29.     Defendants operate a single location within the State of New Jersey; being The Dump Turnersville.

30.     In addition to their physical locale, Defendants maintain an online presence through their two websites, to wit: www.thedump.com and www.haynesfurniture.com (hereinafter, collectively, the "Websites").

31.     While Defendants do not currently offer Products for purchase through the Websites, they do provide that interested customers may contact them using an online form in order to inquire into the purchase of specific items, as follows:

**Advertisement from www.thedump.com:**

**Are your products available for purchase online?**

At this time, we do not sell directly online. If you are interested in a particular item/s, please contact your **nearest store** for availability and any other inquiries. You may also reach out to us via email on our **contact page**.[1]

---

[1] Source: http://www.thedump.com/frequently-asked-questions

**Advertisement from www.haynesfurniture.com:**

### Are your products available for purchase online?

At this time, we do not sell directly online. We understand that furniture is a significant investment. We want to make sure our customers are completely satisfied with their purchase. By viewing our products in store firsthand, you can fully appreciate the quality and aesthetics of the furniture. If you are interested in a particular item, please contact your **nearest store** for availability and any other inquiries. You may also reach out to us via email on our **contact page**.[2]

32.    Moreover, using a link provided on the Websites, customers may pay for purchased Products online, as follows:

**Advertisement from www.thedump.com:**



[3]

---

[2] Source: http://www.haynesfurniture.com/frequently-asked-questions
[3] Source: https://homefurnishingscreditcompany.com/Pay_Bill_Online.asp

**Advertisement from www.haynesfurniture.com:**



33.    Defendants post signs and notices in-store, out-of-store and on the Websites,

advertising the dramatically "discounted prices" of their Products.

34.    These signs and notices can be seen by all customers.

35.    Most, but not all, Products have price tags which state the market or retail price as

well as the purported discounted price of same, as follows:

**Advertisement from www.thedump.com:**



---

[4] Source: https://homefurnishingscreditcompany.com/Billpay/HaynesFurniture.asp
[5] Source: http://www.thedump.com/living-room-furniture-leather-sofa-prime-top-grain-warehouse-outlet-discount

**Advertisement from www.haynesfurniture.com:**





36.    By omitting the market or retail price for some Products, Defendants have created a sense of urgency for its customers to purchase those advertised as being dramatically discounted.

37.    Defendants' website, www.thedump.com, asserts that the average "discounted price" of Products is 30% to 70% off the market or retail price of same, as follows:

**Advertisement from www.thedump.com:**

> We're where the most respected brand names in furniture, rugs and mattresses Dump their closeouts, overstocks and design samples 30 to 70% off price. We Dump all the unnecessary costs. New off-price deals get Dumped every[7]

38.    Defendants do not provide any information regarding how they have determined the purported market or retail price of its Products, upon which the purported discounted prices are based.

39.    The exact Products sold by Defendants – baring the same labels, brand names and/or universal product codes – are not readily available for purchase within the open market.

---

[6] Source: http://www.haynesfurniture.com/living-room-furniture-leather-sofa-top-grain-rocky-mountain
[7] Source: http://www.thedump.com

40.    Products similar, if not identical, to those sold by Defendants are routinely sold by other vendors within the market at prices well below the market or retail prices advertised by Defendants, making those market prices advertised by Defendants completely fictitious.

41.    For example, Defendants offer for sale a top-grain leather sofa that has a listed market or retail price of $3,400.00, as follows:

**Advertisement from www.thedump.com:**



**Advertisement from www.haynesfurniture.com:**



42.    An almost identical leather sofa, the same of which is also made with top-grain leather and features individually applied nail head trim, is available for purchase from Dynamic Home Décor for $1,699.00, as follows:

---

[8] Source: http://www.thedump.com/living-room-furniture-leather-sofa-brandy-alligator-warehouse-outlet-discount
[9] Source: http://www.haynesfurniture.com/living-room-furniture-leather-sofa-brandy-classic

**Advertisement from www.dynamichomedecor.com:**



10

43.    Moreover, the exact same leather sofa sold by Dynamic Home Décor is sold by at least four other retailers, none of which advertise a total price, inclusive of shipping and sales tax, exceeding $1,795.35, as follows:

**Advertisement from www.google.com/shopping:**



11

44.    Accordingly, the market or retail price of $3,400.00 for the leather sofa, as advertised by Defendants', is fictitious.

---

[10] Source: https://www.dynamichomedecor.com/Leather-Italia-1444-6110-0304234.html?gclid=EAIaIQobChMIoa-s7tmV1QIVjo2zCh3Hdw9gEAkYBCABEgI5JvD_BwE

[11] Source: https://www.google.com/shopping/product/16897124793648500810?q=BRANDY+LEATHER+SOFA&biw=1750&bih=750&bav=on.2,or.&tch=1&ech=1&psi=sH9vWdDcCILs-QGJnIGIBw.1500479433912.3&prds=hsec:online&sa=X&ved=0ahUKEwiv5Yy-2ZXVAhWFcj4KHYn3CnIQ2SsIDQ

45.     Additionally, certain Products sold by Defendants are advertised as being "one-of-a-kinds", as follows:

**Advertisement from www.thedump.com:**

We buy overstocks, one-of-a-kinds, factory sell outs, showroom models and design prototypes, all brand new, first quality merchandise from the most respected designers and manufacturers at 30, 40, 60% off and more. The stuff regular stores don't want you to know about. Most manufacturers don't want us to use their names in our ads, but you'll know them when you see them. [12]

46.     Specifically, Defendants advertise and sell a number of Products which have been designed exclusively for sale by them.

47.     For example, Defendants advertise and sell the Jessica Jacobs furniture collection; the same of which is only available for sale by them, as follows:

**Advertisement from wwwfacebook.com/thedump:**



48.     Moreover, the Jessica Jacobs furniture collection was designed in direct conjunction with Defendants; a fact which Defendants boast, as follows:

---

[12] Source: http://www.thedump.com/about-us
[13] Source: https://www.facebook.com/TheDump/posts/10153835512249484

**Advertisement from www.thedump.com:**

> We seek out the same manufacturers used by the high-end labels and work with them directly to produce unique, high quality upholstered furnishings at a fraction of the cost. [14]

49.     Despite the one-of-a-kind nature of the Jessica Jacobs furniture collections, Defendants list market or retail prices for same, as follows:

**Advertisement from www.thedump.com:**



[15]

**Advertisement from www.haynesfurniture.com:**



[16]

50.     The true market or retail price for those "one-of-a-kind" Products advertised and sold by Defendants is the purported discounted price at which Defendants are selling them since they are not available for purchase in any other market.

---

[14] Source: http://www.thedump.com/jessica-jacobs-high-end-upholstery-furniture-at-outlet-prices
[15] Source: http://www.thedump.com/living-room-furniture-chair-jessica-jacobs-marley-warehouse-outlet-discount
[16] Source: http://www.haynesfurniture.com/living-room-furniture-blue-velvet-chair-rhapsody-jessica-jacobs

51.    Based on the foregoing, the "discounts" publicized by Defendants are grossly exaggerated, if not entirely fabricated.

52.    Defendants' sales revenue is derived from Products purchased subject to these fictitious discounts.

## PLAINTIFF DEGENNARO'S PURCHASES

53.    Plaintiff, on behalf of himself and the Class, realleges and incorporates all of the foregoing paragraphs by reference as if same were fully set forth at length hereinbelow.

54.    On June 16, 2017, Plaintiff went to The Dump Turnersville.

55.    On that date, Plaintiff purchased two items from Defendants for a total of $794.08, inclusive of a delivery charge and applicable sales tax.

56.    Defendants had represented, through signs, tags and other advertising, both in-store and online, that both of the products purchased by Plaintiff were discounted from their purported market or retail price.

57.    It was these advertisements that initially induced Plaintiff into making his purchases.

58.    After seeing the two items he ultimately purchased on www.thedump.com, Plaintiff printed off the webpages depicting the items, which listed their market prices and purported discounted prices, and showed them to a sales associate at The Dump Turnersville, where his purchases were made.

59.    As Plaintiff's June 16, 2017 sales receipt reflects, Plaintiff purchased a leather recliner and a television cart (see Exhibit A).

60.    The leather recliner purchased by Plaintiff, being Model Number 0445A387007169RECL02 (see Exhibit A), was sold by Defendants at a "discounted price" of

$299.00 and advertised as having a market price of $900.00, for a total discount of $601.00, or 67% off, as follows:

**Advertisement from www.thedump.com:**

 

17

61.     An almost identical recliner, the same of which is also made with leather gel upholstery, is available for purchase from Walmart for $263.15, as follows:

**Advertisement from www.walmart.com:**



18

62.     Moreover, the exact same leather gel rocker recliner sold by Walmart is sold by at least three other retailers, none of which advertise a total price, inclusive of shipping and sales tax, exceeding $368.99, as follows:

---

17 Source: http://www.thedump.com/living-room-furniture-rocker-recliner-oversized-leather-gel-warehouse-outlet-discount
18 Source: https://www.walmart.com/ip/Evelyn-Dark-Brown-Leather-Gel-Reclining-Rocking-Chair/162597086#read-more

**Advertisement from www.google.com/shopping:**



63.     Accordingly, the market price of $900.00 for the leather recliner, as advertised by Defendants', is fictitious.

64.     The television cart purchased by Plaintiff, being Model Number 0657BD35 (see Exhibit A), was sold by Defendants at a "discounted price" of $295.00 and advertised as having a market price of $899.00, for a total discount of $604.00, or 67% off, as follows:

**Advertisement from www.thedump.com:**

 

---

[19] Source: https://www.google.com/shopping/product/16656957733049836348?q=leather+gel+rocker&rlz=1C1GCEA_enUS768US768&biw=1466&bih=840&sa=X&ved=0ahUKEwiq89-ax6DXAhXE6RQKHXsnAKwQqA0IISgB
[20] Source: http://www.thedump.com/entertainment-furniture-media-center-baldwin-shabby-chic-warehouse-discount-outlet

65.    An almost identical television cart is manufactured by Martin Furniture and available for purchase online for a total price of $599.00, inclusive of shipping and sales tax, as follows:

**Advertisement from www.google.com/shopping:**





21

66.    Accordingly, the market price of $899.00 for the television cart, as advertised by Defendants', is fictitious.

67.     The advertised market price of the items purchased by Plaintiff are not an accurate depiction of the price at which they typically sell within the market.

68.    Defendants intended for Plaintiff and the Class to justifiably rely on the truth of the listed market or retail prices of the Products and the representations of a discount from those inflated and fictitious market or retail prices in order to induce them to make purchases from Defendants.

69.    Plaintiff and the Class made their purchases in that manner and reliance just as intended by Defendants.

---

21

https://www.google.com/search?q=eclectic+baldwin+70%22+tv+stand&rlz=1C1GCEA_enUS768US768&source=univ&tbm=shop&tbo=u&sa=X&ved=0ahUKEwj54Z2Y3qDXAhXLJVAKHW7JCkMQsxgIKA&biw=1466&bih=840#spd=11777989894765563420

70.    Defendants' representations that Plaintiff and the Class would be purchasing Products at "discounted prices" were false and Plaintiff and the Class did not receive the advertised discounts.

## CLASS ALLEGATIONS

71.    Plaintiff, on behalf of himself and the Class, realleges and incorporates all of the foregoing paragraphs by reference as if same were fully set forth at length hereinbelow.

72.    Pursuant to R. 4:32, Plaintiff brings this class action on behalf of himself and all others similarly situated persons who purchased Products from The Dump Turnersville.

73.    The Class is defined as follows (hereinafter the "Class Definition"):

> Any and all persons who, within the six (6) years preceding the date of class certification, have purchased a product or products from The Dump (a/k/a The Dump Furniture Outlet) located at 5700 NJ-42, Turnersville, NJ 08012, which were advertised by The Dump either online, in-store, on television, on the radio, or in a newspaper, magazine or other tangible form of communication, and which advertisements represented the product or products as having a market price greater than the price at which they were sold by The Dump.

74.    The Class Definition is comprised solely of objective criteria and there are reliable and administratively feasible mechanisms which can be employed for determining whether Class members fall within the Class Definition.

75.    This class action has been brought and may be properly maintained as a class action, pursuant to R. 4:32-1(a), as Plaintiff and the Class satisfy the numerosity, commonality, typicality and adequacy requirements for maintaining a class action.

76.    The number of members of the Class is so numerous as to render joinder impracticable.

77.    Common questions of law and fact exist as to all members of the Class in that they each suffered an economic injury as a direct result of Defendants' false advertisements.

78.    Plaintiff's claims are typical of the claims of the members of the Class.

79.    Plaintiff has the requisite personal interest in the outcome of this class action and will fairly and adequately protect the interests of the Class.

80.    Plaintiff has no interests that are adverse to, or in conflict with, the interests of the members of the Class.

81.    Plaintiff has retained counsel that have the resources, expertise and experience to successfully prosecute this action against Defendant and they intend to prosecute this action vigorously.

82.    Plaintiff knows of no conflicts among members of the Class or between counsel and members of the Class.

83.    Pursuant to R. 4:32-1(b)(3), common questions of law and fact exist as to all members of the Class and predominate over any questions that affect only individual members of the Class.

84.    Those common questions of law and fact include, without limitation, the common and predominant questions of whether the Plaintiff and the Class have been injured as a result of Defendants' conduct as set forth herein and whether Plaintiff and the Class are entitled to damages as a result of Defendants conduct and, if so, in what amount.

85.    A class action is the superior method for the fair and efficient adjudication of this controversy since prosecution of individual litigation would create a substantial risk of inconsistent or varying adjudications with regard to individual members of the Class that would establish incompatible standards of conduct for Defendants.

86.     Moreover, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them and the cost to the court system for adjudicating individual cases would be enormous.

87.     Individualized litigation would also magnify the delay and expense to all parties and the court system, whereas the maintenance of this action as a class action in this Court presents far fewer management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class.

## FIRST CLAIM FOR RELIEF
### Violation of the New Jersey Consumer Fraud Act
### N.J.S.A. 56:8-1 et seq.

88.     Plaintiff, on behalf of himself and the Class, realleges and incorporates all of the foregoing paragraphs by reference as if same were fully set forth at length hereinbelow.

89.     The CFA at N.J.S.A. 56:8-2 prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, [sic] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise...

90.     Defendants have advertised, offered for sale and sold their Products to consumers in the State of New Jersey.

91.     In doing so, Defendants have knowingly engaged in the use of unconscionable commercial practices, false promises, misrepresentations and the knowing omission of material facts.

92.     Defendants' conduct in violation of the CFA includes, but is not limited to, inducing Plaintiff and the Class to purchase its Products by advertising inflated and fictitious market or retail

prices upon which their purported discounted prices are based, as discussed at more length hereinabove.

93.     Defendant's conduct in violation of the CFA has resulted in Plaintiff and the Class purchasing Products which are valued at far less than what Defendants had represented.

94.     Each unconscionable commercial practice, false promise, misrepresentation and/or knowing omission of material fact by Defendants constitutes a separate violation of the CFA.

95.     Plaintiff, on behalf of himself and the Class, seeks damages in an amount equal to the difference in value between the "market" or "retail" price of Products advertised by Defendants and the true market or retail price of Products purchased by Plaintiff and the Class, and all other relief allowable under the CFA.

## SECOND CLAIM FOR RELIEF
### Breach of Contract

96.     Plaintiff, on behalf of himself and the Class, realleges and incorporates all of the foregoing paragraphs by reference as if same were fully set forth at length hereinbelow.

97.     Plaintiff and the Class entered into a contract with Defendants for the purchase and sale of Defendants' Products.

98.     The contract provided that Plaintiff and the Class would pay Defendants for their Products.

99.     The contract further provided that Defendants would provide Plaintiff and the Class a discount from the market or retail price of the Products.

100.    An express condition included within the contract was that Plaintiff and the Class were receiving a discount from the "market" or "retail" price of the Products.

101.    Plaintiff and the Class paid Defendants for their Products and satisfied or waived all other conditions of the contract.

102.    Defendants breached the contract by providing Plaintiff and the Class with Products which are valued at far less than what Defendants had represented.

103.    Plaintiff and the Class had a reasonable expectation of receiving Products valued at the "market" or "retail" price advertised by Defendants.

104.    As a direct and proximate result of Defendants' breach, Plaintiff and the Class have suffered economic injuries.

105.    Plaintiff, on behalf of himself and the Class, seeks damages in an amount to be established at trial, together with all other relief allowable by law.

### THIRD CLAIM FOR RELIEF
**Unjust Enrichment**

106.    Plaintiff, on behalf of himself and the Class, realleges and incorporates all of the foregoing paragraphs by reference as if same were fully set forth at length hereinbelow.

107.    Defendants charged Plaintiff and the Class for their Products.

108.    Defendants represented to Plaintiff and the Class that their Products were being offered at a "discounted price".

109.    The "discounted prices" advertised by Defendants were based upon inflated and fictitious market or retail prices, as discussed at more length hereinabove.

110.    Defendants received money from Plaintiff and the Class in exchange for Products valued at far less than what Defendants had represented.

111.    Plaintiff and the Class had a reasonable expectation of receiving Products valued at the "market" or "retail" price advertised by Defendants.

112.    By misrepresenting the value of its products, Defendants ensured that it would profit at the expense of Plaintiff and the Class; leaving no one to benefit but Defendants themselves.

113.    It would be unjust to allow Defendants to retain the proceeds from the sale of Products to Plaintiff and the Class while Plaintiff and the Class are left with Products of lesser value than represented by Defendants.

114.    Defendants have knowledge or an appreciation of the benefit conferred upon them by Plaintiff and the Class.

115.    Defendants have been unjustly enriched.

116.    Plaintiff, on behalf of himself and the Class, seeks damages in an amount equal to all such additional profits obtained by the Defendants as a result of their deceptive, misleading and unlawful advertising practices, together with all other relief allowable by law.

## FOURTH CLAIM FOR RELIEF
### Fraud

117.    Plaintiff, on behalf of himself and the Class, realleges and incorporates all of the foregoing paragraphs by reference as if same were fully set forth at length hereinbelow.

118.    Defendants represented to Plaintiff and the Class that the prices of Products purchased were discounted from the purported market or retail prices for such Products.

119.    Defendants' representations about the market or retail prices and discount prices are material to the sale of Products.

120.    Defendants' representations were false in that the advertised market or retail prices of Products, upon which the discount prices were based, were inflated and fictitious, as discussed at more length hereinabove.

121.    The prices paid by Plaintiff and the Class were not discounted as advertised and Defendants' representations to the contrary were false.

122.    The purported discounted prices advertised by Defendants are actually the true market or retail prices of the Products.

123.    Defendants knew that Plaintiff and the Class would be misled by their representations.

124.    Defendants intended that Plaintiff and the Class would rely on their representations of "discounted prices" as a means of inducing the purchasing of Products.

125.    Defendants had no intention of ever offering Plaintiff and the Class discounts at the time they made their representations of said discounts since they knew the purported discounted prices were actually the true market or retail prices.

126.    Plaintiff and the Class justifiably relied on Defendants' representations that they were purchasing high-quality Products at "discounted prices."

127.    What Plaintiff and the Class actually purchased were Products of lesser value than what was represented by Defendants.

128.    As a direct and proximate result of Defendants' fraudulent representations, Plaintiff and the Class have suffered economic injuries.

129.    Plaintiff, on behalf of himself and the Class, seeks damages in an amount equal to the advertised discounts that were never received, together with all other relief allowable by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as appropriate for the above causes of actions as follows:

a.    Entry of an Order, at the earliest practicable time, certifying this matter as a class action pursuant to Fed R. Civ. P. 23 and appointing Plaintiff and his counsel as representatives of the Class;

b.    Entry of a declaratory judgment in favor of Plaintiff and the Class and against Defendants on all claims contained herein;

c.    For all recoverable compensatory and consequential damages sustained by Plaintiff and the Class in the maximum amount permitted;

d.    For actual and/or statutory damages for injuries sustained by Plaintiff and the Class in the maximum amount permitted;

e.    For exemplary and punitive damages for injuries sustained by Plaintiff and the Class in the maximum amount permitted;

f.    For treble damages for injuries sustained by Plaintiff and the Class in the maximum amount permitted;

g.    For civil penalties in the maximum amount permitted;

h.    For statutory pre-judgment and post-judgment interest on any amounts;

i.    For payment of reasonable attorneys' fees and costs; and

j.    For such other and further relief as this Honorable Court may deem equitable and just.

Respectfully submitted:

PRIME LAW

Dated: ___Nov___ _22_, 20_17_                    By: _____

TYLER T. PRIME, ESQ.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury as to all issues so triable herein.

Respectfully submitted:

**PRIME LAW**

Dated: Nov. 22, 2017

By:
TYLER T. PRIME, ESQ.

## CERTIFICATION PURSUANT TO N.J.S.A. 56:8-1 et seq.

A true and correct copy of this complaint has been forwarded to the Attorney General of the State of New Jersey.

I certify that the foregoing statements are true. I am aware that if any of the foregoing statements made are willfully false, I am subject to punishment.

Respectfully submitted:

PRIME LAW

Dated: NOV 22, 2017

By: _____
TYLER F. PRIME, ESQ.

# EXHIBIT A

510 THE DUMP TURNERSVILLE
STATE ROUTE 42
TURNERSVILLE NJ 08012
856 677-1030
Customer Service (800) 768-0348

| | Sales Order |
|---|---|
| | 510MUF390 |

| Scheduled Date | Document Date |
|---|---|
| 06/18/17 | 06/16/17 |

| Sold To | Ship To |
|---|---|
| ANTHONY F DEGENNARO<br>13 OVERHILL RD<br>ASBURY PARK, NJ 07712<br>Home: 732 580-9468 | ANTHONY F DEGENNARO<br>13 OVERHILL RD<br>ASBURY PARK, NJ 07712 |

| Terms | Salesperson | Customer # | Store |
|---|---|---|---|
| CASH BEFORE DELI | WILLIAM C GOSHUE | 510MUF390 | 510 |

| Type | Printed: 06/16/17 10:12AM |
|---|---|
| D - Delivery | |

| Ln# | Model/Brand/Description | Location | Ord. | Res. | Price | Amount |
|---|---|---|---|---|---|---|
| 1 | D  Model: 0445A387007169RECL02<br>Brand: LEATHER_RECLINER<br>RECL ROCKER BROWN LEATHER | 2007C | 1 | 1 | $299.00 | $299.00 |
| 2 | D  Model: 0657D365~~You've Been DUMPED!~~<br>Brand: 0657<br>Baldwin 60" TV Cart | 2705B | | | $295.00 | $295.00 |
| 3 | D  Model: NOWAR<br>Brand: 0100<br>5YR FULL RPLCMNT WARR DECLND | | 1 | 1 | $0.00 | $0.00 |

| Product Protection Information | |
|---|---|
| Customer Accepts_____ | Customer Declines_____ | Items Purchased Not Eligible for Warranty |

| | |
|---|---|
| Merchandise: | $594.00 |
| Delivery Charge: | $149.00 |
| Tax: | $51.08 |
| Total Sales Order: | $794.08 |
| Amount Paid: | |
| Current Payments | |
| AMERICAN EXPRESS    06/16/17 | $-794.08 |

| Amount Due: | $0.00 |
|---|---|

x

**TERMS & CONDITIONS**

ıank You! We greatly appreciate the opportunity to help furnish your home, and it is our sincere hope that your purchase will bring you many ·urs of enjoyment! The Dump's promise is to offer first quality furniture, bedding and floor covering at prices that are discounted 30 -70% off what others charge. In order to keep that promise, the following terms and conditions apply to your purchase.

ır your convenience, the following contact emails and phone numbers are provided:

· For day of delivery or day of customer pick up questions, please call the store number provided on the front of the sales ticket;
· For after-delivery service, please email customerservice@thedump.com <mailto:customerservice@thedump.com> or call 800-768-0348;
· For questions concerning your financed account, please email billing@thedump.com <mailto:billing@thedump.com> or call 866-538-4489.

accordance with N.J.A.C. 13:45A-5.3(a), If the merchandise ordered by you is not delivered by the promised delivery date, The Dump must 'fer you the choice of (1) canceling your order with a prompt, full refund of any payments you have made, or (2) accepting delivery at a 'ecific later date. See sales order for the promised delivery date and see "Refund Policy" below.

____ WILL IT FIT?: It is your responsibility to ensure that all items will fit in the designated areas of your home. If your home has narrow ıorways, staircase turns or low ceilings, you should measure these locations to ensure proper fit. The furniture must fit in the normal pathways ' your home as we cannot hoist furniture to an upper floor. We do not dismantle furniture as that voids the manufacturer's warranty. It is ıportant that your room is empty and the space is available to receive your new furnishings. Our drivers are not able to move or handle your her furnishings or electronics, nor can they affix anything to your walls. If your furniture is unable to be fitted in the desired location, you will ceive an in-store credit for the cost of the furniture (delivery fees are not eligible for the in-store credit). Additionally, in the event you choose ır home delivery service, a redelivery fee will also apply..

____ MANUFACTURING DEFECTS AND DELIVERY DAMAGE: We carefully inspect our merchandise for manufacturing defects before lease and we make every effort to ensure deliveries take place without damage. In those instances where defects or damages do occur, the ıllowing applies. Stock and Floor Merchandise. Stock Merchandise is product provided from our warehouse stock and it will be provided to ʊu in factory condition. Floor Merchandise is product purchased directly off our sales floor. Due to the discounts offered on Floor Merchandise, he Dump will not authorize a refund, exchange or return on Floor Merchandise. We provide our customers with an opportunity to inspect all loor Merchandise prior to purchase and complete an Inspection Sheet. Floor Merchandise will be provided to you in substantially the same ɔndition as recorded on the Inspection Sheet. In either case, you must report any manufacturing defect or delivery damage to the delivery driver the time of delivery, or, the case of a customer pickup, to a Dump representative on the day of pick up. In the event you designate someone ≥sides yourself to pick up or receive your merchandise, it is the responsibility of your designee to inspect and report any defects or damages; ilure of your designee to do so will result in your having accepted the merchandise "as is". Once we have received your report of defect or ımage, you will have the option of (i) accepting the furniture, in which case we will schedule a technician to come to your location to assess ıd repair the defect or damage (we will not send a technician beyond a 45 mile radius of the purchasing location). (ii) exchanging the furniture ı question for like merchandise or (iii) returning the furniture and receiving a full refund. In the event a replacement is authorized, the warranty rm of the replacement merchandise will be limited to the remaining term of the original warranty. In the case of delivered merchandise, if the ≥livery location is within a 45-mile radius of the purchasing location there shall be no redelivery fee for the replacement merchandise. lerchandise picked up by customer (and deliveries outside of a 45-mile radius from the purchasing location) must be returned to the purchasing ıcation at customer's sole cost and expense. Should we be unable to replace the merchandise within 30 days, we will offer you a refund or an ı-store credit. You agree that neither The Dump nor its representatives will be liable for any delays in delivery of merchandise to you. Clearance lerchandise. All sales of Clearance Merchandise are sold "AS IS" and are final after pickup or delivery. Given the nature of Clearance lerchandise, we strongly encourage that such merchandise be picked up by our customers rather than delivered by us (or our representative) as ıy damage that occurs during delivery is your sole responsibility.

ı the unlikely event that damage occurs to your property, home, or business during the course of a delivery, such damage must be reported to ıe delivery driver at the time of delivery and be noted on the delivery manifest. No claims shall be allowed after the delivery truck has left your remises.

____ ALL OTHER RETURNS AND EXCHANGES: No two pieces of furniture are identical, so the wood grain, color and stitching of your ırniture could vary from the pieces you saw on our showroom floor. Therefore, we generally caution against returns for aesthetic reasons. ıowever, under New Jersey law, you have the option of accepting the furniture or returning it and receiving a full refund (see Refund Policy elow). A decision to return the furniture for aesthetic reasons must be made at the time of customer pick up or home delivery. Please contact ıump Customer Service at customerservice@thedump.com <mailto:customerservice@thedump.com> or call 800-768-0348 to determine if an xception is available. All such exchanges and returns must be accompanied by a Returned Merchandise Authorization issued by Dump ıustomer Service. Merchandise that is not in substantially the same condition as when purchased may not be exchanged or returned. Except as ereinafter provided, customer is responsible for all costs related to returns and exchanges, including, but not limited to, delivery fees. The ɔllowing exceptions apply:

_____ Bedding: Pursuant to applicable federal and state laws, all bedding sales are final. However, in the event that the bedding has not been removed from its original sealed packaging, bedding may be exchanged or returned at the time of pickup or delivery. Both exchanges and returns are subject to a restocking fee of the greater of $100 or 15% of the purchase price. All of our mattresses, with the exception of mattresses sold on an "as-is" basis, come with a manufacturer's warranty. The Dump will assist our customers in submitting any claims under the manufacturer's warranty. In the event the law tag is removed from the bedding, the warranty is automatically voided.

_____ Rugs: Rugs under $500 may be exchanged or returned within five (5) days from the date of customer pickup or delivery. Rugs over $499 may be exchanged or returned within five (5) days of pickup or delivery

_____REFUND POLICY: Refunds, where applicable, are processed in accordance with the following:
- Cash - Refunded by check from The Dump's corporate office and sent to the customer's address on file, no later than 5 business days after merchandise return;
- Check - Refunded by The Dump's corporate office and sent to the customer address of record 14 business days after the original sale;
- Debit/Credit Cards - Refunded by the store no later than 5 business days after merchandise return;
- In - House Financing: Credited by The Dump's corporate office within 3 business days after merchandise return;
- All Other - See store business office for details.

_____CANCELLATIONS: Orders that are cancelled or rescheduled within one day of scheduled pick up or delivery shall be subject to a stocking fee of the greater of $100 or 15% of the purchase price.

_____ DELIVERY: The Dump is pleased to provide delivery for our customers. Customers are not obligated to use the delivery services ovided by The Dump and may secure delivery via another company (deliveries made by such other companies will be treated as a customer ckup). Refused deliveries (including, but not limited to, no-fits, customer not-at-home and on-the-road-cancellations) shall be subject to a stocking fee of the greater of $100 or 15% of the purchase price. Redelivery shall also be subject to an additional redelivery charge. No funds are allowed for no-fits, customer-not-at-home and on-the-road-cancellations.

_____ CUSTOMER PICKUP: You are solely responsible for the safe loading and transportation of your merchandise, including, but not limited , providing your own blankets, furniture pads, rope, straps and related supplies. For insurance purposes, The Dump cannot assist you in: (i) ading mattresses and/or box springs onto any open air vehicles (such as pickup trucks) or uncovered trailers; (ii) loading any merchandise hen, in The Dump's sole discretion and judgement, the result would be an unsafe condition; (iii) securing your load, including, but not limited , providing rope, straps or other supplies. Most merchandise will be provided to you in the factory carton and will require your assembly. To isure merchandise availability, please schedule the pickup of your merchandise with your sales associate and make the necessary arrangements complete the pickup on that date. If merchandise is not picked up within 5 days of the scheduled pickup date, the merchandise will be returned our warehouse and a restocking fee of the greater of $100 or 15% of the purchase price will be charged to you.

_____EXCLUSION OF WARRANTIES: ANY WARRANTIES APPLICABLE TO ANY MERCHANDISE PURCHASED PURSUANT TO HIS ORDER ARE LIMITED TO ANY MANUFACTURER'S WARRANTIES ONLY. WE HEREBY EXPRESSLY DISCLAIM ALL 'ARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF IERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND HE DESCRIPTION, IF ANY, ON THE FACE OF THIS ORDER. FURNITURE USED IN RENTAL HOMES OR COMMERCIAL ETTINGS IS SOLD AS IS AND IS NOT COVERED UNDER MANUFACTURER'S WARRANTY.

_____LIMITATION OF REPAIR SERVICES: The Dump does not provide repair services on merchandise past its applicable warranty period.

_____COLLECTION COSTS (INCLUDING ATTORNEY FEES): In the event there is an unpaid balance due The Dump or any of its affiliates you otherwise breach your agreement with The Dump or any of its affiliates, you agree to pay costs of collection, including attorney's fees of 1/3% of all amounts owed.

_____ DISPUTE RESOLUTION: Any controversy, claim or dispute relating in any way to this purchase, directly or indirectly, shall be brought state court in the jurisdiction in which you made the purchase, and you agree to the exclusive jurisdiction of the state courts of the jurisdiction which you made the purchase. Your agreement with The Dump concerning or relating to this purchase shall be governed by, and construed in cordance with, the laws of the state in which you made the purchase, without regard to principles of conflicts of law thereof. You agree that y claim for loss or damage that you bring against The Dump in connection with this purchase must be instituted in state court in the risdiction in which you made the purchase within one (1) year of the date you incurred the alleged loss or damage, regardless of whether you ere then aware of the alleged loss or damage. You agree to waive any right to a trial by jury in any action relating in any way to this purchase, rectly or indirectly, and you agree that this waiver of any right to a trial by jury shall not be waivable by you or The Dump. If you bring an tion against The Dump for any controversy, claim or dispute relating in any way to this purchase, directly or indirectly, and The Dump prevails any pre-trial dispositive motion, at trial, or at any subsequent appeal and/or retrial, you agree to reimburse The Dump for the reasonable torney's fees and costs The Dump incurs in defending itself in the action.

_____LIMITATION OF REMEDIES: You shall not be entitled to recover from us any consequential or incidental damages, including without nitation, damages for loss of use, loss of time, or loss of profits or income. You expressly waive any right to collect damages in excess of the

_____ENTIRE AGREEMENT: These Terms and Conditions and the sales invoice on the reverse side contain the entire agreement and understanding of the parties concerning the transaction. These Terms and Conditions may not be modified, canceled, rescinded or revoked, in whole or in part, except in writing and, in the case of The Dump, signed by an officer of The Dump. If any part hereof is determined to be invalid by a court of competent jurisdiction, the remaining Terms and Conditions will remain in full force and effect. No waivers or statements made by representatives of The Dump will be binding unless set forth in writing.

Rev:13817

_____        _____        _____
Customer Signature             Customer Name (please print)              Date